WAGNER, Respondent, v. SPRINGAIRE CORPORATION, Appellant. [Case No. 56.]

PLESHEK, Respondent, v. SPRINGAIRE CORPORATION, Appellant. [Case No. 57.]

*Nos. 56, 57. Argued January 6, 1971.—Decided March 2, 1971.*
(Also reported in 184 N. W. 2d 88.)

For the appellant there was a brief by *Hersh, Magidson & Lensky* of Milwaukee, and by *Horwitz & Regner* of Oshkosh, and oral argument by *Arthur Magidson.*

For the respondents there was a brief by *Van Epps, Gull & Werth* of Weyauwega, and oral argument by *Jerome E. Gull.*

HEFFERNAN, J. The hearing on applications for default judgments was held on November 3, 1969, more than sixty days after the expiration of the time for answering the complaints. The hearing was upon due notice. At the hearing the defendant asked for enlargement of the time in which to answer.

Sec. 269.45 (2), Stats., provides:

"After the expiration of the specified period . . . the court may in its discretion, for like cause, upon notice, extend the time where the failure to act was the result of excusable neglect . . . ."

To show excusable neglect, Springaire's attorney submitted identical affidavits in each case. The affidavits

state that he, the attorney, had failed to timely file Springaire's answer because of the "pressure of work and personal affairs, including distress by reason of prolonged illness of his wife during the past three months." The attorney further stated that the neglect was his and was not attributable to the president of Springaire.

The motions for enlargement of time to answer were denied, and after further hearing default judgments were entered.

The power conferred by sec. 269.45 (2), Stats., is highly discretionary, and a trial court's determination in this respect will not be disturbed except for a clear abuse of discretion. *Greenfield v. Milwaukee* (1951), 259 Wis. 101, 47 N. W. 2d 291; *Bornemann v. New Berlin* (1965), 27 Wis. 2d 102, 133 N. W. 2d 328. The burden is upon the party seeking to extend the time to show proper notice, cause, and excusable neglect. *Miller v. Belanger* (1957), 275 Wis. 187, 81 N. W. 2d 545.

There is no doubt that defendant's attorney showed there was "cause" for the delay. There was not a mere disregard of his duty as an attorney to prepare and serve the answers of the defendant. There was a reason asserted for neglecting to act in a timely manner.

The question remains, was the neglect "excusable"?

In *Giese v. Giese* (1969), 43 Wis. 2d 456, 168 N. W. 2d 832, a case involving the failure to timely serve a complaint, we reasserted that a trial judge's determination to enlarge the time for acting was highly discretionary and would only be upset in the event there is a clear abuse of discretion.

In *Giese,* page 461, we cited with approval the definition of "excusable neglect" appearing in 15A *Words and Phrases* (perm. ed.), 225: " 'Excusable neglect' is that neglect which might have been the act of a reasonably prudent person under the same circumstances."

In *Giese,* where, as here, the pressure of other work was asserted by the attorney, we concluded that "ex-

cusable neglect" was not shown without additional persuasive explanation. As in *Giese,* no persuasive further explanation is given in this case. In fact, no explanation is given beyond the above assertion. We conclude that there was no abuse of discretion when the trial judge determined that the "pressure of work" did not constitute a sufficient excuse for the neglect to file an answer.

Additionally, defendant's attorney states that distress occasioned by a prolonged illness of his wife caused him to neglect to file the answers. Again, however, he has given no explanation of how much of his time was diverted from his law practice by reason of this family illness. Nor was any explanation given why he was unable to have another member of his law firm draft timely answers. In the absence of persuasive explanation by the defendant, the trial judge's determination that these factors do not suffice to constitute "excusable neglect" must be sustained.

We also note that defendant contends that the plaintiffs had acquiesced in at least a portion of the delay. Our review of the record leads only to the conclusion that the plaintiffs, after the service of the summonses, deferred the service and filing of the complaints to permit Springaire's attorney to catch up on other work. The summonses were served on May 21, 1969, but the complaints were not served until August 12, 1969. While there is evidence of some agreement to delay the service of the complaints, there is no evidence that plaintiffs agreed to a delay for answering after the complaints were served. While neglect in filing an answer as the result of an agreement between counsel is clearly "excusable neglect," no such agreement is shown here. *Giese, supra,* page 462.

Shortly after default judgments were entered, defendant moved to vacate the judgments, pursuant to sec. 269.46 (1), Stats., which provides as follows:

"269.46 **Relief from judgments, orders and stipulations; review of judgments and orders.** (1) The court may, upon notice and just terms, at any time within one year after notice thereof, relieve a party from a judgment, order, stipulation or other proceeding against him obtained, through his mistake, inadvertence, surprise or excusable neglect and may supply an omission in any proceeding. In addition to the required affidavits, all motions to vacate a judgment entered upon default or cognovit and to obtain a trial upon the merits shall be accompanied by a proposed verified answer disclosing a defense."

Motions to vacate default judgments are addressed to the sound discretion of the trial court, and this court will not disturb the trial court's decision unless an abuse of discretion appears. *Marshall Field & Co. v. Fishkin* (1923), 180 Wis. 149, 192 N. W. 463; *Newman v. Newman* (1950), 257 Wis. 385, 43 N. W. 2d 453; *Wesolowski v. Wesolowski* (1966), 30 Wis. 2d 15, 139 N. W. 2d 660.

The affidavits submitted with Springaire's motions to vacate the default judgments did not state any grounds for its assertion that the neglect to serve the answers was "excusable" other than the grounds which were asserted at the time of Springaire's motion for enlargement of the time to answer. For the reasons stated in the discussion of that issue, we conclude that it was not an abuse of discretion for the trial court to hold that the neglect of Springaire and its counsel to serve the answers was not "excusable."

The trial court also held that Springaire had not submitted sufficient evidence to establish that it had meritorious defenses to the actions of the plaintiffs, but it stated that, inasmuch as Springaire had failed to show that the judgments resulted from "excusable neglect," the existence of a meritorious defense was immaterial.

Counsel for Springaire contends that the question of whether the defendant's answers allege meritorious de-

fenses is one of the factors to be considered by the trial court in determining whether the neglect resulting in the default judgments should be excused. He further contends that the proposed answers stated a meritorious defense and that this factor, along with the factors mentioned at the hearing of Springaire's request for an enlargement of time to serve answers, constituted a sufficient showing of excusable neglect to render denial of the motions to vacate the judgments an abuse of discretion. We fail to follow the reasoning that a defendant may inordinately delay his answer if his defense is meritorious.

The decisions of this court prior to 1963 required that a party wishing to secure vacation of a default judgment must show two things: (1) That the judgment was entered through "mistake, inadvertence, surprise or excusable neglect," as provided by sec. 269.46 (1), Stats., *and* (2) that the party has a meritorious defense to the action. *Velte v. Zeh* (1925), 188 Wis. 401, 206 N. W. 197; *Phillips v. Portage Transit Co.* (1908), 137 Wis. 189, 118 N. W. 539; *State v. Omernick* (1961), 14 Wis. 2d 285, 111 N. W. 2d 135. In 1963 the requirement that the motion to vacate be accompanied by a verified answer disclosing a defense was put into the statute. Chapter 37, sec. 4, Laws of 1963. The cases cited and sec. 269.46 (1), Stats., treat the two requirements as separate and distinct. The excusability of the neglect is dependent on whether the acts or omissions of the defendant were consistent with those of "a reasonably prudent person under the same circumstances." *Giese, supra,* page 461 and 15A *Words and Phrases* (perm. ed.), 225. The merits of the defense proposed by the defendant are immaterial to such a consideration.

Since we conclude that the trial court in its discretion could properly deny the motions to vacate the judgments, for the reason that the neglect was not shown to be ex-

cusable, we need not consider the merits of the defense. Were we to find "excusable neglect," the meritoriousness of the defense would be pertinent. Even though the neglect were excusable, it would constitute an abuse of discretion to vacate the judgments unless there were a showing of an arguably meritorious defense.

Springaire further contends that, even if the neglect of its attorney to serve the answers was not excusable, that neglect should not be imputed to the corporation. In *Paschong v. Hollenbeck* (1961), 13 Wis. 2d 415, 108 N. W. 2d 668, this court said that mistakes, ill advice, or other failures of an attorney may constitute "excusable neglect" by a client, where the client has acted as a reasonable and prudent person in engaging an attorney of good reputation, has relied upon him to protect his rights, and has made reasonable inquiry concerning the proceedings. We made it clear, however, that, while the trial court need not impute the negligence of the attorney to the client, it has the discretionary power to do so. In each case, the trial court must exercise its "equitable powers to secure substantial justice between the parties." *Paschong, supra,* page 424. This may or may not call for imputation, depending on the facts of each case. We reversed and remanded in *Paschong* to permit the trial court to determine whether the attorney's negligence should be imputed to his client. On remand the trial court determined that the attorney's negligence in erroneously advising his client that he need not take further steps to protect his interest in real estate even in the face of an upcoming foreclosure sale of the property should nevertheless be imputed to the client. We affirmed in *Paschong v. Hollenbeck* (1962), 16 Wis. 2d 284, 114 N. W. 2d 438, and accepted the trial court's reasoning that the purchaser at the foreclosure sale followed the law and it would be unfair to him to reopen the foreclosure judgment to permit the plaintiff, who

had not followed the law, to share in the judgment. *See* note in 1962 Wisconsin Law Review, 540. As in *Paschong,* the plaintiffs herein have diligently pursued their causes of action. It would be unfair to deprive them of their judgments because of the delays of the defendant. We pointed out in *Lawrence v. MacIntyre* (1970), 48 Wis. 2d 550, 180 N. W. 2d 538, the responsibility of an attorney in moving his case to final judgment. The defendant has a corollary responsibility to act in a timely fashion to preserve his rights, and in addition cannot inexcusably delay the proceedings and thus thwart the prosecution of a plaintiff's cause of action.

In the instant case, Springaire contends that it acted reasonably and prudently in engaging Attorney Horwitz as its attorney and that Springaire relied on Horwitz to do all things necessary to protect its rights. We have no reason to doubt the professional competence of Attorney Horwitz. On the other hand, the records are devoid of any showing that Springaire's president, Aladdin Eid, or any other representative of Springaire made "reasonable inquiry" concerning the proceedings in this action. Although the assertion was made that the president of Springaire had no knowledge of the pendency of these actions until the morning of the hearing on the default judgments, the record shows that he had signed the "Consent to Substitution of Attorneys" in this action on August 5, 1969, almost three months prior to the default proceedings. The affidavit of Attorney Horwitz indicates that the affairs of Springaire with regard to the transactions in respect to the two cases under consideration here "are in a state of confusion as reflected from the inadequate records" of the corporation. This alleged cause of delay is attributable directly to Springaire and not to its attorney. This is not the type of situation which might exonerate a "reasonably prudent person under the same circumstances" from the impu-

tation of unexcused neglect. It was not an abuse of discretion to impute the neglect of Attorney Horwitz to Springaire.

*By the Court.*—Judgments and orders affirmed.